When faced with two competing plain and ordinary meanings of Claim 1 of the 193 patent, the District Court erred in picking the more restrictive of the two meanings. The District Court wrote in a requirement that appears nowhere in the claim language itself and nowhere in the specification, specifically that in order to determine a relative location between two balloons, you must use a vector drawn between them. In contrast, the specification of the 193 patent… Mr. Lieber, this is Judge Teich. I'm not sure that's what the District Court was doing. I read the District Court as rejecting your argument that simply plotting the locations of the balloons on the map satisfies the determining step, and that seems to me to be correct. It requires something more than the ability to determine. It requires actual determining. Well, Your Honor… But that answers the second question here as to whether there's a genuine issue of material fact that precluded summary judgment. That's a different issue under the District Court's claim construction. Well, Your Honor, state data contends that what the District Court actually did is picked up language, a location that is measured in relation to some other object or reference point, and that is measured in language is specifically a vector. That if you look at the District Court opinion at lines 11, 12, and Appendix 14, the District Court there actually pretends that that quotation that it's articulated is Dr. Hansman's entire definition of what relative location is. But that's not actually what Dr. Hansman's opinion was. Dr. Hansman's opinion went on from that particular point. The District Court actually truncated the sentence. Dr. Hansman continued that sentence and wrote, i.e., it is a vector measured as the distance and direction from one object to another. So we contend, Your Honor, that it's not just that the District Court rejected our view, but the District Court picked up Dr. Hansman's view, which wrote limiting language into the actual language of the claim. Now, with respect to our view, our view is that the claim language itself, determining locations of one or more neighbor balloons, deserves its full scope. And there's no limitation in the specification that requires any vector or measurement. Let me see if I can explain to you what I think is going on here, and you can tell me why I'm wrong or whether I'm right. You could have a system, and it's my understanding that Google contends that that's what its system is, in which you plotted the absolute location of the balloons, that you didn't care in determining whether to move a particular balloon, what had happened in real time to the other balloons that were plotted. All you cared was whether the balloon is in its assigned space or somewhere else. And they're saying that that's what their system does and that that is non-infringing. If I understand your contention, is that under the Google system, something more is being done, that you take that map and you make a determination if a balloon has drifted from its assigned space, and you consider the relative position of other balloons in making that determination and that that's infringing. Is that an accurate description of the difference between the parties? I think not quite, Your Honor. And let me demonstrate that point by the diagram that's in our brief, in the blue brief, at page 12 or at appendix 1106. And that's the small world graphical user interface. And if we take a look at that and mapping that back to the exact claim language, here's what that diagram does. The first thing that that diagram does is it determines the location of the target balloon, and that's balloon 241 in the center bottom of the page. And that balloon 241, the small world GUI, specifically articulates its latitude, longitude, and altitude in the left column. And the triangle to the right and going down from 241 projects that balloon's forward path. That's actually the target balloon as the exact claim language describes it. What that GUI then does is it determines the location of three other balloons, 242, 214, and 240. In relation to that target balloon, you can see exactly where they are on this GUI relative to 241. Now, this GUI draws a distinction. That seems to be saying that you could use the data to determine relative position, but that in order to infringe, you don't actually have to use that information about relative position. That seems to me not correct. Well, Your Honor, the issue, it seems to me, is that there is no specification in the claim language or anywhere in the 193 or 678 specification that says how precise that relative location needs to be determined. We can see from the face of the GUI that 240 is mostly to the east of 241 and a little bit south. We can see that 242 is to the west and north. And we can see that, for example, 240 is closer to 241 than 214. Now, that GUI never articulates the latitude and longitude for 242, 214, or 240. Those are the exact neighbor balloons that the claim language calls out. And so that GUI does exactly what the claim language says we need to infringe. It determines the location of a target balloon, and then it determines the location of neighbor balloons relative to that. Nowhere in the specification, anywhere in the patent, does it say you've got to determine that location to within an inch, a yard, a mile, or any other particular amount. Nor does it say that you have to determine direction at three points off the compass or any other specific direction. And that's what Google actually contends here, is that the patent language requires both a distance and a direction from that target balloon. So we think that the Small World GUI demonstrates not just that Small World can infringe, but that it does infringe, Your Honor. So the question here, it seems to me, that's presented is, is GPS mapping within the full scope of the claim language within Claim 1 of the 193? And we say that it was. The specification of the 193 mentions GPS four separate times. And in one instance, it says, and this is Column 18, Lines 15 to 21 of the 193, that the present invention uses a GPS unit to determine the platform's geographic coordinates. And that, of course, is the language that's picked up in Claim 1 determined. So the specification itself suggests that a GPS can be used to do the determination that Google now claims requires a vector. And then similarly, if you go back to the 678 specification, which is the specification that Google itself wrote, that specification says, and this is at Column 22 of the 678, the locations of one or more neighbor balloons could be determined using GPS. And so, Your Honor, that exactly, that part of the specification from the 678 describes exactly what the Small World GUI does that I've just spent some time walking through. This is for Toronto. Can I ask this question?  So one of the things that I guess occurred to me in reading through this was that it seemed to me that all of your arguments about exactly what was doing the determining were directed to particular software systems that were doing something and not to the engineer sitting in front of the screen and looking at the Small World graphical user interface. You haven't made an argument that the engineer, by looking at this image, is the agent of Google doing the determining. Well, that's actually, I think that's exactly what's going on, which is to say that if you look at our expert's opinion at footnote 300 at appendix 1044, he writes, Small World is a visualization into Google's fleet control system, particularly focused on allowing Google's flight engineering team to track and operate a fleet of balloons. So this GUI is not sitting there in the abstract. An engineer is actually using it to determine, i.e., observe the locations of other balloons as input to whatever mechanistic operation he then wants to apply to them, i.e., manually move them. I don't recall seeing in your briefing an argument that the determining is being done by the person sitting in front of the Small World screen who notices that this balloon is a little bit southeast of the target balloon for purposes of taking any action that Google wants to take in operating its system. I don't know that we made that argument in our brief directly, Your Honor, but it beggars the imagination that an engineer is going to be sitting and looking at the Small World and doing nothing with it. It's not doing nothing with it. It's doing something that involves noting the spatial relationship between the two balloons. I'm not sure you've made an allegation to that effect, which may be the difference between the ability to look at the map and determine something and actually doing it. Well, what else can Small World be used for, Your Honor? The Small World is just not sitting there in the abstract. Someone is using it for a particular purpose. And that record was in front of the district court on summary judgment in terms of our experts' opinion saying Small World is actually being used to manage Google's fleet of balloons. Right, but it may not be using the visually available spatial relation between the target and the neighbor. I think he must be from the face of the Small World GUI, Your Honor. Well, must be doesn't really raise an issue. As I understand what Dr. Pollan says at Appendix 1080, Paragraph 230, he says that the Oregon dispatcher determines the relative position of the balloon. Now, the question is whether that allegation is sufficient to raise the genuine issue of material fact. Google says no because he didn't examine the source code. What's your answer to that? I think there are other places in Mr. Pollan's opinion where he specifically articulates, and I think it's right around footnote 31044, in which Google engineers use Small World to move balloons manually. With respect to Oregon dispatcher, I think... That's not, this paragraph doesn't involve manually using the data, making the determination. It talks about the Oregon dispatcher source code. Well, you're correct.  And I don't think we're using Oregon dispatcher source code as a source of our allegation that engineers use Small World to track and operate a fleet of balloons. I'm going to 1044 in... What are you saying, relying on Paragraph 231? A genuine issue of material fact? Well, I don't know that... I don't think 231 necessarily does. I do think that footnote 300 and paragraphs 165 and 66 of Pollan do raise a material fact. In other words, in footnote 300, there's a specific allegation that Small World is a visualization, okay, focused on allowing Google's flight engineering team to track and operate a fleet of balloons. And it's that operation, based on this observation, that creates an issue of material fact, Your Honor. Yeah, but all that, all that footnote 300 says is allows the flight engineering team to track and operate. It doesn't say that they do track and operate. No, please proceed. I'm sorry, was that to me, Your Honor? Okay, please respond to Judge Dyke's question. Sure. I mean, the answer is that Small World can't be used for any other purpose. It comes off of the face of Small World that that's what it's used for. So there's no statement in the expert report that the engineers actually used this data to determine volatile location. I believe it's here, but I can't identify it as I'm standing here right now, Your Honor. Okay. Okay, well, we'll save you rebuttal time, and perhaps that will help to clarify. Let's hear from the other side. Mr. Camber. Good morning, Your Honors, and may it please the Court. There was a single straightforward issue before the District Court. Does the Loon system determine, quote, determine the location of one or more neighbor balloons relative to the determined location of the target balloons? There's no disagreement about how the system works. Loon determines the latitude, longitude, and altitude of every balloon in the system, and then plots those locations on the same map, the Small World that we were just talking about. That act of plotting it was the only basis provided by Space Data's expert as to why the Loon system allegedly determined the locations of balloons relative to a target balloon. The District Court correctly found that although plotting balloons on a map shows that the Loon system has the information from which to determine the location of one balloon relative to the location of another, it's not evidence that such a determination is ever made. It seems counterintuitive to me that you would have a system like this and that you wouldn't make a determination of relative position in deciding whether to remove a balloon. I mean, balloons drift around. You're trying to maintain coverage of the target area. And I suppose in theory you could have a system where you only pay attention to whether a balloon has strayed from its assigned spot, and you try to put it back without regard to what happened to the other balloons. I suppose in theory that could be the case, and I guess Google's contention is that that is the case. You don't care whether other balloons have moved. You only care whether the particular balloon that you're focusing on is over its target area. Am I correct about that? That's entirely correct, Your Honor. The balloons operate without knowledge of and completely independent of one another. They don't know it. And I also agree that it's somewhat counterintuitive, and I think that's part of the reason that Space Data has struggled with this. But that counterintuitiveness is also discussed. It's in the record at Appendix 1332, where Dr. Hansman, Google's expert, talks about how and why that approach is rather distinct from traditional flight control systems. Well, where does Dr. Hansman say explicitly that the Google system does not make a determination of relative position? I mean, he seems to address himself to particular features of the system, but I don't see an overall statement that says that they don't make a determination of relative position. Am I mistaken about that? I think so, Your Honor. I think Dr. Hansman addressed the opinion that he was rebutting Dr. Polin, of course. And Dr. Polin's opinions with respect to this element, this second step of Claim 1, are at 1113 through 14 of the appendix. And it was really those that Dr. Hansman then took on and said, this plotting does not qualify as plotting on a map that's discussed in paragraphs 305 through 307 of Dr. Polin's report. That plotting does not qualify as a determination of the relative locations of neighboring balloons. Okay, I understand that, but that's not my question. My question is, is there any place in the record where your expert witness says explicitly that the Google system does not determine relative position? Yes, Your Honor. Well, I think it may be in the context of the next step, Your Honor. So it's paragraph 145 of appendix 1332, and where he's saying – let me just pull this up. There's 193 patent – excuse me. The Loon Stratospheric Communication System does not, quote, determine locations of one or more neighbor balloons relative to the determined location of the target balloon. So that's the second sentence of paragraph 145, Your Honor, at appendix 1332. And the next sentence? Specifically, the Loon system does not determine the location of any balloon in the network relative to the location of any other balloon in the network. In short, at no step in the control of Loon's network of balloons does the system determine the distance and direction of one balloon from any other balloon within the network. Space data presented no evidence that there was any such determination being made, other than, again, at appendix 1113 through 14, when it talked about plotting the balloon locations on the map. And the theory that was posited in the answer to an earlier question, that the graphical user interface of SmallWorld somehow meets this because it identifies a target balloon and neighboring balloons, that theory is not presented and was not presented by Dr. Pullen at those appendix sites. He was not saying, and doesn't say, that there was any calculation being made or any determination of a target balloon. In fact, there's no mention of a target balloon in that discussion. All he says is that each balloon's location is relative to every other balloon's location expressed in the same manner. This theory based on SmallWorld is certainly not one that their expert presented, and it's not one that they presented in the briefing before the district court here. Now, Judge Taranto, I want to address your question actually from earlier about the engineer doing the determining. Sitting in front of the SmallWorld screen and looking at it. Sure. Again, that theory was not one that Dr. Pullen put in his report, and it wasn't a theory that they made down below in trying to oppose summary judgment. And I think there's a reason for that is the balloons are flown using these different algorithms that are discussed in the briefs. There are the seeker algorithms and some of the Oregon dispatcher algorithms as well. And none of those operate the balloons. Balloons aren't flown manually by flight engineers looking at the SmallWorld map and that user interface in order to move them. So the problem that they have here is that step two requires this determining locations relative to a target balloon. And then step three, of course, requires determining a desired movement of the target balloon based on those relative positions, those relative locations. And there's no point at which in step three, an engineer is relying on anything that would be happening in step two in order to make or make the balloons move, fly them. And I think that's the reason, the practical reason, really, or the logical reason why you don't see Dr. Pullen making that argument down below and why there's really no record of that position. Can I just ask you this question? I think I remember your brief saying that while-and I may get this not quite right-that while Dr. Hansman said determining location of A relative to B is defining a vector from one to the other in either direction. The direction doesn't matter, but distance and direction. And I think your red brief says that the district court did not adopt that vector piece of what Dr. Hansman says. Why do you-what's the distinction between what the district court adopted and a vector? Just the degree of precision with which direction and distance are being measured? I think it may be a degree of precision question. I think the issue here is that looking at appendix page 14, what Space Data is saying the court did in terms of adopting a vector construction, I think, misstates the record. There's no place in the district court judge's opinion where she says, I'm limiting this claim to a particular vector or a particular calculation of distance and direction. There may be other ways or various ways to make the determination, and she didn't limit it to any one particular one. But would all of them-if one puts aside the issue of precision, then is there a substantive difference between saying vector and identifying distance and direction from one to the other? I don't know that there's a substantive difference between those two, but there are also other ways one could imagine doing it, whether you give an angle, for example, or some other methodology. I imagine there are various different ways to express a quantifiable determination that is then output in step two into step three to make the determination on how to move a balloon. I'd like to talk just briefly about this issue of whether there's a claim construction going on here. Google moved for summary judgment based on the plain meaning of the claim language, which, again, requires determining the locations of balloons relative to a target balloon. And there was no point at which Google asked Judge Freeman to depart from that plain meaning, and she did not do so. She didn't take this on and think that there was a claim construction issue here. Well, I think there was, because the patentee here is arguing that the ability to make the determination is sufficient to satisfy the determining step, and she rejected that. So that's a claim construction. I think it's fair to say, Judge Dykes, that the district court did consider space data's interpretation of the claim language on summary judgment and deemed it implausible. Whether one calls that implausibility determination claim construction or not, I think is a semantic point on which this court's authority is not always consistent. Looking at the Summit 6 case, for example, the court equated applying a plain meaning construction with declining to construe the claim. I don't see what difference it makes. They asked for a claim construction, which she rejected. They're arguing that she was wrong. The question before us is whether the limiting construction that they offered was correct or not. Yes, Your Honor. We completely agree with that. And with respect to the intrinsic record that Judge Freeman looked at in resolving that issue of whether or not this Claim 1 of the 193 patent was broad enough to cover simply the idea of plotting the locations of balloons on a map, she found that it was not, we think, correctly based on the intrinsic record before her. Mr. Liebler points to the fact that the specification talks about GPS identifying location. There's nothing that ties that to Step 2 of the claim here. Step 1 requires determining the location of a balloon in the system, and that's what GPS does. Step 2 requires determining the locations of neighboring balloons relative to a target balloon, and that's not something that GPS plotting alone does. There certainly was nothing in the 193 patent that the judge found that warranted departing from the plain meaning of the claim language and interpreting the phrase, quote, determine the location of one balloon relative to the determined location of the target balloon to encompass plotting balloons on the same map without more, without some actual form of determining the location of the target balloon. And again, Dr. Pullen never identified one, either in his analysis of Step 3 or his analysis, for that matter, of the various different algorithms, including Oregon Dispatcher or the seeker algorithms. I think it's, the district court probably said it best at Appendix 1973. She found that Google didn't seek plain construction. She said that space data could have, but didn't, and in any event, that she considered their belated arguments as inconsistent with the plain meaning overall and the specification. Thank you, Your Honors. Any more questions for Mr. Camber? No. All right. Thank you, Mr. Lieber. You have three minutes. Thank you, Your Honor. Judge Dyke, I'd like to address the question that you asked Mr. Camber. There was a claim construction that's going on here, and space data contends that it was Google that actually wrote a limitation into the actual language. The claim itself doesn't say anything about a vector or any measurement. It says determining, and space data is entitled to the full scope of determining unless there's some disavowal in the prosecution history or lexicography going on. None of that is going on in this patent, and space data is entitled to the entire scope of determining, which includes space data's plain meaning that we offered to the district court at summary judgment. I do want to point the court to the specification in the 678 at column 22, lines 15 and 16. That specification reads, the locations of the one or more neighbor balloons could be determined by using GPS. That seems to me to be a reference to step two, as Mr. Camber points out, of what the patent claim requires, which is to say determining the locations of those neighbor balloons. I agree that it doesn't say relative to the target balloon, but it can't be anything else. Unless there are any more questions from the panel, I would submit. Any more questions, Mr. Lieber? Okay. Thank both counsel. The case is taken under submission.